UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　　Plaintiff,<br>　vs.<br><br>MARTIN PADILLA,<br><br>　　　　　Defendants. | 3:11-po-006-JDR<br><br>**MEMORANDUM DECISION**<br><br>Trial by Court |

Defendant **Martin Padilla** is charged in a violation notice with shouting and screaming at Domiciliary staff, using profanity in violation of 38 CFR 1.218(a)(5).[1] The case was tried to the court on March 25, 2010. ***For reasons stated below I conclude that the government has met its burden of proof and therefore find the defendant guilty.***

---

[1] The CVB Ticket as issued charged a violation of 38 CFR § 1.218(b)(11). The offense was amended at the arraignment to allege a violation of 38 CFR 1.218(a)(5).

## Findings of Fact

On November 23, 2010, Martin Padilla, a Viet Nam veteran, was enrolled in a program operated at a residential facility of the United States Veterans Administration (VA) in Anchorage, Alaska. The VA provides a work program for homeless veterans who have substance abuse or mental health problems. Padilla was a rec assistant in the front domiciliary building. This was not his first time participating in the program.

David Gay, a vocational rehabilitation specialists, was in charge of the workshop at the VA facility. In the workshop participants make wood products such as furniture using tools and equipment. Padilla was not assigned to the work shop nor was he allowed to be there.

On November 23, 2010, Mr. Gay heard loud voices coming from the workshop. He proceeded to the workshop where he observed Padilla talking in a loud voice with a shop worker, Gabe Harmon. The conversation was about the way people are treated at the VA facility and their appointments are frequently cancelled. Mr. Gay approached and said they were talking too loudly. Mr. Gay also said that Padilla would need to leave the break room. Padilla responded: "In a minute." Mr. Gay said: "No, now."

Padilla started walking toward the break room. Gay went after him and asked where he was going. Padilla said: "You know what I'm doing, I'm gonna clean

the fish tank." Gay said: "Not in here, because this is where we get our drinking water and food." Yelling, Padilla said he was going to clean the f***ing fish tank. Gay said that he was going to call the VA police. Padilla, responded: "I don't care, call the f***ing police." Gay walked toward the door to call the police. Padilla started to follow him pointing his walking stick at Gay.

Melinda Lou Loyst, a vocational rehab specialists heard loud voices down the hall. She walked toward the break room and then concluded everything was alright. She started to leave but because she perceived one of the persons was mad she decided to go back to the break room and check on it. When she opened the door she witnessed Padilla pointing or jabbing his stick toward Mr. Gay. Loyst stated "I saw the whole thing." Padilla swung the stick around and pointed it at her. He yelled: "Keep out of this you f***ing bitch." Gay went to his office, pushed the panic alarm, and then telephoned the VA police. The director arrived and he and Padilla went to the Director's office. Shortly thereafter the VA police arrived and interviewed persons involved in the incident.

Mr. Gay testified that he called the VA police because Padilla had a "behavioral flag" on his record. Gay claimed that he felt intimidated when Padilla had raised his stick but that Padilla never said that he would hit anyone with the stick. It is undisputed that Padilla had been upset with Gay in the past.

Ms. Loyst testified that in the past when Padilla gets upset he raises his voice. She said this happens a couple times a week. The difference this time from past occasions, in her opinion, was Padilla jabbing the stick toward Mr. Gay. Padilla had been transferred off and on to her case management list several times in the past because of behavioral problems.

Veterans Affairs (VA) officer James Paul Corso Jr, testified that a warning is sometimes issued instead of a ticket depending on how the person perceives the incident. He stated that a ticket was issued for this incident because of the defendant's previous problems at the VA facility. The officer said he was briefed by Mr. Gay who told him what he wanted done.

Ms. Loyst stated that the defendant's continued use of abusive language for eight months was the reason she wanted the incident reported to the VA police. The ticket was not issued for any threatening use with the stick. It is part of the contract between the participant and the VA facility that the resident not use profanity. Officer Corso said the ticket was issued for disorderly conduct and abusive language.

**Analysis**

Padilla is charged with shouting and screaming at Domiciliary staff and using profanity on November 23, 2010, at a property under the charge and control of the Veterans Administration in Anchorage. The regulation proscribes the

11-po-006-JDR PADILLA TBC Memorandum Opinion_mtd.wpd    4

Case 3:11-po-00006-JDR   Document 13   Filed 04/01/11   Page 4 of 9

following: "Disturbances. Conduct on property which creates loud or unusual noise; . . . or the use of loud, abusive, or otherwise improper language . . . is prohibited." 38 C.F.R. § 1.218(a)(5).

Section 1.218(b) sets forth a schedule of offenses and penalties for violation of the rules and regulations set forth in paragraph (a) of that section. Section 1.218(b)(11) provides: "Disorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility" is subject to a fine of $250.00. Padilla is not charged with obstructing the normal use of the facility or impeding its normal operations. He is charged with disorderly conduct which creates "loud, boisterous, and unusual noise."

Citing to § 1.218(b)(11), the penalty provision is similar to that of the substantive offense section in 1.218(a)(5). To be guilty of the offense charged it is not sufficient for the government merely to prove that the defendant was speaking loudly or that he was using "improper language." In order for punishable conduct to create a disturbance on VA property under (a)(5) or rise to the level of disorderly conduct the defendant must have impeded or disrupted the peace, order, decency or safety of the facility.

The court first considers the evidence of use of obscene language. The government argues that Padilla used profanity in his discourse with Mr. Gay and Ms. Loyst. Language that is abusive, vulgar or irreverent qualifies as profanity. The content of the statement to Mr. Gay, while distasteful and offense to the ego when standing alone, would not be considered obscene under the First Amendment. See for example, Hess v. Indiana, 414 U.S. 105, 107, 94 S.Ct. 326(1973) (holding that yelling, "we'll take the f***ing street later", could not be punished as fighting words); Cohen v. California, 403 U.S. 15, 20 (1971) (the words "f**k" the draft on defendant's jacket did not constitute fighting words).

The First Amendment to the Constitution protects criticism of government and police officers which may be annoying or inconvenient. City of Houston v. Hill, 482 U.S. 451, 461 (1987). The protection extends to words that some may consider profane. 482 U.S. at 462-463. See also, Terminiello v. Chicago, 337 U.S. 1, 4 (1949) ("Speech is often provocative and challenging . . ." but protected against criminal punishment unless likely to produce a clear and present danger of a serious social evil). Words that are obscene in everyday parlance may be protected speech notwithstanding the fact that they constitute disgusting, repulsive or offensive remarks.

Padilla's statement to Mr. Gay to go ahead and call the f***ing police was shouted in a non-public space. The government may limit or prevent speech

which "tends to incite an immediate breach of the peace." <u>Chaplinsky v. New Hampshire</u>, 315 U.S. 568, 572 (1942). In context it did not constitute fighting words. Padilla did not physically attempt to prevent Gay from calling the police nor did he engage in any physical struggle with him. The regulations prohibit the use of abuse or otherwise improper language. Because the Veterans Administration facility is a non-public forum the government has the power to regulate conduct on the facility as a proprietor and manager of its internal operations. The regulation proscribing a disturbance is interpreted to proscribe interference with objective purposes and use of the facility, not merely as a means to suppress expression contrary to a public official's views.

Aside from whether such language is constitutionally protected speech, an issue not raised in this case, such improper language by itself would not likely constitute a disturbance. Calling Ms. Loyst a "bitch" would not by itself likely constitute a disturbance. A disturbance under the regulation requires more than discourteous, ill mannered, rude, insulting words to rise to the level of a citable offense. <u>Compare</u>, <u>United States v. McDermott</u>, 971 F. Supp. 939 (E.D. PA. 1997), wherein the defendant service man uttered vulgarities at security officers while being

11-po-006-JDR PADILLA TBC Memorandum Opinion_mtd.wpd    7

Case 3:11-po-00006-JDR   Document 13   Filed 04/01/11   Page 7 of 9

questioned for over three minutes. The district judge reversed his conviction for disorderly conduct.[2]

## Breach of Peace

In weighing the evidence in the instant case the court must consider the context in which Padilla's statements were made. In addition to uttering profanity Padilla failed to lower his voice after being asked to do so by Mr. Gay. At trial, Melinda Lou Loyst demonstrated credibly the loudness of Padilla's comments to her. Padilla's remarks were clearly unusually loud and lacking in reasonable restraint. His loud outcry was made in response to Mr. Gay's statement that the fish bowl was not to be washed in the break room. His remarks were so annoying and upsetting to the tranquility that Ms. Loyst decided to investigate the commotion she heard down the hall. Padilla's high volume and intense sounds continued when he saw Ms. Loyst at the door.

From all outward appearance Padilla intended for his conduct to cause annoyance to the two VA employees. He further demonstrated his irate feelings by pointing his walking stick toward both Mr. Gay and Ms. Loyst. His shouting startled Ms. Loyst, even though she was familiar with his personality.

---

[2] The applicable statute there was 18 PA. CONS. STAT. § 5503(a)(3). The relevant portion of § 5503 provided: "a person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (3) uses obscene language, or makes an obscene jester . . . ."

The court determines that Padilla's interference with a staff member's peace of mind and their enjoyment of the normal operation of the facility constituted a disturbance in violation of the code of regulations prescribed for the facility. Wherefore, the court finds beyond a reasonable doubt that the government has met its burden of proving the violation against Padilla as charged. Judgment shall be entered accordingly, and the defendant is directed to appear with counsel on **Thursday, April 7, 2011 at 9:30 AM**, for imposition of sentence.

DATED this 1st day of April, 2011, at Anchorage, Alaska.

   /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge